UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT EDWARD TERRELL, JR.,

                 Petitioner,                 Case No. 4:05-cv-108

v.                                      Honorable Paul L. Maloney

MARY BERGHUIS,

                 Respondent.

_____/

## REPORT AND RECOMMENDATION

      This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  After a jury trial, Petitioner was convicted in the Kalamazoo County Circuit Court of two counts of first-degree premeditated murder,  MICH. COMP. LAWS §  750.316, two counts of armed robbery, MICH. COMP. LAWS § 750.529, four counts of possession of a firearm during the commission of a felony (felony-firearm), MICH. COMP. LAWS § 750.227b, and one count of being a felon in possession of a firearm (felon-in-possession), MICH. COMP. LAWS § 750.224f.  On May 10, 1996, the trial court sentenced Petitioner to consecutive two-year prison terms for each of the four felony-firearm convictions to be followed by concurrent sentences of life in prison without parole for each of the first-degree murder convictions, life in prison for each of the armed robbery convictions, and forty to sixty months for the felon-in-possession conviction.  (Br. in Supp. of Pet. at 1-2, docket #1.)

In his *pro se* petition, Petitioner raises a single ground for habeas corpus relief, for which he seeks an evidentiary hearing:

> PETITIONER IS ENTITLED TO A WRIT OF HABEAS CORPUS AS TO THE TRIAL COURT'S REFUSAL TO GRANT A NEW TRIAL WHERE PETITIONER WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL BY AN IMPARTIAL JURY GUARANTEED HIM BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION WHERE JUROR MOLBY GAVE [A] FALSE ANSWER DURING VOIR DIRE TO [A] QUESTION ASKED BY TRIAL COURT WHICH HAD JUROR MOLBY ANSWERED TRUTHFULLY WOULD HAVE LED TO A FOLLOW-UP QUESTION SHOWING BIAS AND GIVING RISE TO CHALLENGE FOR CAUSE AND PETITIONER IF NECESSARY WOULD HAVE DEFINITIVELY REMOVED JUROR MOLBY THROUGH A PEREMPTORY CHALLENGE.

(Br. in Supp. of Pet. at iv, 6, 8.)  Respondent has filed an answer to the petition (docket #11) arguing that Petitioner's ground for habeas relief should be denied because it is procedurally defaulted and lacks merit.  Petitioner has filed a response (docket #16).  I find that Petitioner's habeas corpus claim is without merit and that Petitioner has not demonstrated entitlement to an evidentiary hearing. It is therefore unnecessary to address the question whether that claim is also barred by procedural default. *See Mahdi v. Bagley,* 552 F.3d 631, 635 (6th Cir. 2008).  I recommend that the petition be denied on its merits.

## Procedural History

### A.    Trial Court Proceedings

The state prosecution arose from the brutal killing of Beth Enama and Douglas Kramer during the robbery of a video store in Kalamazoo, Michigan in December 1994.  The victims were employees of the store, and each received four or five gunshot wounds. The Michigan Court of Appeals provided the following summary of facts:

The crimes at issue took place at a Video Watch video rental store in Kalamazoo, Michigan in December 1994. Two employees were murdered shortly after the store closed at midnight. Money was stolen from one of the registers, and the front door was broken from the inside out, which apparently allowed the perpetrator to escape after the murders.

The following evidence implicated defendant. Defendant knew the layout of the store because he was a former employee. Defendant was displeased about being fired from the store and had a motive for murder. There was evidence that defendant lied to the police about his alibi. Arthur Payne testified that defendant asked him to lie to the police with regard to his alibi. Defendant is left handed and the police believed the shooter was left handed. Ann Webb testified that she informed the police that she thought defendant should be a suspect. Jerry Bowman identified defendant as being in the store shortly before the murders. A .38-caliber handgun, which was directly traced to defendant's possession around the time of the murders in 1994, was identified as being one of the weapons used in the murders. Defendant was broke on the night of the murders, and, in fact, was so broke that he apparently borrowed ten dollars from his sister to buy gasoline. Eight hundred dollars was stolen from the crime scene. A nine-millimeter Speer bullet, the same type used at the murder scene, was found under the passenger seat in defendant's car. Finally, and most compelling, Abigail Lawing testified that defendant confessed the crime to her.

Based on the aforementioned evidence, a rational[] jury could, and did, determine that defendant was the perpetrator of the crimes.

(Nov. 13, 1998 Mich. Ct. of Appeals (MCOA) Op. at 1, 8, docket #21.)

Petitioner's five-week jury trial began on March 20, 1996 with jury selection. All prospective jurors took an oath or affirmed under penalty of perjury that they would truthfully and completely answer all questions regarding their qualifications to serve as jurors. (Trial Transcript I (TT I), docket # 42 at 6.) The court and attorneys conducted a lengthy voir dire, which concluded on the afternoon of March 21, 1996, with the prosecutor and defense counsel expressing their satisfaction with the jury that had been selected. (TT II, 136, docket # 45.) All jurors took the prescribed oath that they would justly decide the questions submitted and would render a verdict only

on the evidence introduced and in accordance with the court's instructions.  (TT III, 3-4, docket # 47).

On April 16, 1996, after the close of proofs, the attorneys delivered their closing arguments.  (TT XIII, 17-110, docket # 57).  The court's jury instructions reminded jurors that their verdict was to be based only on the evidence and the court's instructions on the law, and that their decision could not be based on sympathy or prejudice.  (TT XIII, 113).  The jury began its deliberations at 9:21 a.m. on Wednesday, April 17, 1996.  (TT XIV, 6, docket # 58).

On Friday, April 19, 1996, while the jury was deliberating, Judge Ryan Lamb conducted a hearing to address a statement purportedly made by Juror Donald Molby, Jr. to a parking attendant expressing security concerns.  (Hearing Transcript (HT), docket # 60).  Petitioner and his attorney were present at all times during this hearing.  (HT, 3)  The court, prosecutor and defense counsel questioned Juror Molby outside the presence of the rest of the jury.  Juror Molby stated that he had never been threatened during the course of the trial or during the jury's deliberations.  (HT, 7)  He stated that he felt that the Petitioner's father had been staring at him in an intimidating manner. (HT, 8-9)  Molby advised the court that he could put aside any feelings of apprehension and decide the case on the evidence received and the court's instructions.  (HT, 9.)  Molby stated that he had not expressed his concerns to other jurors.  (HT, 9.)  Judge Lamb instructed Juror Molby not to discuss this matter with the other jurors (HT, 10.)  Defense counsel made a motion for a mistrial (HT, 16-17.)  Judge Lamb, having the benefit of questioning Juror Molby and observing his responses during questioning, found that Juror Molby's responses were credible and that there was no basis for a mistrial.  He denied the motion.  (HT, 19-21.)

- 4 -

The jury returned a verdict later on April 19, 1996, finding Petitioner guilty on all nine counts: two counts of first-degree murder, two counts of armed robbery, four felony firearm counts, and one count of being a felon in possession of a firearm.  (TT XV, 5-7, docket # 59.)

The court conducted a sentencing hearing on May 10, 1996.  (Sentencing Transcript (ST), docket # 61.)  During his allocution Petitioner argued that he was not the perpetrator and that he had been "accused and tried under tampered evidence and testimonies filled with lies and contradictions."  (ST, 11)  Petitioner called the jurors "cowards":

> Unfortunately, I later found out that some of my jurors, who I would consider to be shivering [sic]  cowards, who couldn't pay attention to the facts and evidence of this case because their minds were preoccupied by paranoid dilutions [sic] of threats and harassment.

(ST, 11)  Judge Lamb said that he could not let Petitioner's effort to label his jurors as "cowards" pass without comment:

> Then to say that the jurors are sniveling cowards is something that just has to be commented on.  These are people who put aside whatever they were doing in life for a five-week period to listen to something that no person should be subjected to.  But they -- they listened to the testimony.  They listened to the -- the horrible details.  They looked at the photographs.  And, are these people who were impacted by what they had heard and what they saw, and were they a little nervous about the whole process and a little emotionally charged, perhaps upset?  Probably.  They're conscientious people.   They're not accustomed to doing this.   They're not

professional jurors.  It's not their job to sit in a courtroom and listen to the testimony as they did, but they did.

And they're -- they're certainly not sniveling cowards.  They're something that you are not, and never will be: [c]onscientious, law-abiding citizens.  And to have you even suggest that they're any kind of coward[s] just indicates your attitude towards society and your continued temerity in the face of overwhelming evidence.

You say you're innocent of this?  No.  The jury heard all the evidence.  They deliberated long and hard.  And, the verdicts they came up with are supported by that evidence, consistent with it, [and] supported by law.  And, they are to be commended.  And, I do commend them.  Not condemned by the likes of you.

(ST, 22-23).  The court sentenced Petitioner to consecutive two-year prison terms on each of the four felony-firearm convictions, followed by concurrent sentences of life without parole on each of the first-degree murder convictions, life on each of the armed robbery convictions, and forty-to-sixty months on the felon-in-possession conviction.  (ST, 23-24 and 5/10/96 Judgment of Sentence Commitment to Corrections Department, found in Michigan Court of Appeals record, docket # 21.)

### B.  Direct Appeal

Petitioner appealed as of right to the Michigan Court of Appeals, raising grounds unrelated to his present claim.  The Michigan Court of Appeals affirmed his convictions and sentences in an unpublished opinion issued on November 13, 1998.  (*See* MCOA Op., docket #21.)

Petitioner filed a *pro per* delayed application for leave to appeal to the Michigan Supreme Court.   By order entered November 2, 1999, the Michigan Supreme Court denied his

application for leave to appeal because it was not persuaded that the questions presented should be reviewed by the court.  (*See* Nov. 2, 1999 Mich. Ord., docket #22.)

### C.      Post-conviction Relief

On October 16, 2000, Petitioner filed his first motion for relief from judgment pursuant to MICH. CT. R. 6.500 *et seq*.  The motion essentially raised the issue of ineffective assistance of trial counsel and sought an evidentiary hearing.  On December 4, 2000, the trial court denied his motion in all respects.  (*Id.*)  Petitioner appealed the denial of his motion for relief from judgment to the Michigan appellate courts.  The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal pursuant to MICH. CT. R. 6.508(D) and his motion for reconsideration on June 8, 2001 and July 27, 2001, respectively.  (*See* docket #23.)  On March 4, 2002, the Michigan Supreme Court denied Petitioner's delayed application for leave to appeal because he failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D).  (*See* docket #24).

Shortly thereafter, on June 12, 2002, Petitioner filed a second motion for relief from judgment, accompanied by a motion for an evidentiary hearing.  (*See* Ex. E to Br. in Supp. of Pet.) This second motion was based on an allegation of newly discovered evidence.  Petitioner asserted that juror Molby gave a false answer during *voir dire* and that Petitioner learned of the false answer years later after Molby's death.  In an opinion and order entered December 18, 2002, the trial court denied relief.  Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court.  (*See* dockets #25, 27.)  On December 11, 2003, the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal because he failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D).  (*See* docket #25.)  The

Michigan Court of Appeals also denied Petitioner's motion to remand for an evidentiary hearing in the trial court. (*Id.*)  On October 25, 2004, the Michigan Supreme Court denied Petitioner's application for leave to appeal pursuant to MICH. CT. R. 6.508(D). (*See* docket #27.)  The Michigan Supreme Court also denied Petitioner's motion to remand for an evidentiary hearing in the trial court. (*Id.*)

Petitioner filed the instant application for habeas corpus relief on September 28, 2005, raising the same claim asserted in his second motion for relief from judgment.  In a report and recommendation dated October 6, 2005 (docket #2), I recommended that Petitioner's application for habeas corpus relief be barred by the one-year statute of limitations.  After reviewing Petitioner's objections, the District Judge found that Petitioner's application was timely, and, thus, rejected the report and recommendation in an order dated November 2, 2005, and directed that the petition be answered (docket #6).

## <u>Standard of Review</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Johnson v. Luoma*, 425 F.3d 318, 324 (6th Cir. 2005); *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656; *see also McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

### A.    Trial Court Decision

Petitioner's only ground for habeas relief is that he was denied his constitutional right to a fair trial under the Sixth and Fourteenth Amendments when a juror, Donald Molby, Jr., did not disclose during *voir dire* that he knew Petitioner's father. If Juror Molby had answered the *voir dire* questions truthfully, Petitioner argues that his attorney would have removed Juror Molby from the jury pool, either for cause or by peremptory challenge. Petitioner requests an evidentiary hearing.

- 10 -

The trial court denied Petitioner's second motion for relief from judgment and motion for evidentiary hearing in an opinion and order dated December 18, 2002. In denying Petitioner's motion, the trial court provided the following analysis:

> Defendant suggests that he is entitled to a new trial because one of the jurors, a Mr. Donald Molby ("Juror Molby") gave false answers during voir dire, which if they had been answered truthfully would have caused his attorney to remove Mr. Molby with a preemptory challenge. Specifically, the Defendant argues that Juror [Molby] lied when he stated that he did not know Defendant or his family. Defendant asserts that Juror Molby knew Defendant's father and was employed at the same facility as Defendant's father. Defendant further asserts that following the trial Juror Molby returned to work and boasted of how he had played a role in sending Defendant to jail. In support of these allegations, Defendant provides the following exhibits:
>
> (1) Affidavit of Robert Terrell, Sr.
>
> (2) Obituary of Juror Mr. Molby
>
> (3) Affidavit of Stanley Kilbourn
>
> (4) Affidavit of Curtis Bell
>
> [(5) - (11) omitted]
>
> [N]either the affidavits provided with this Motion nor the obituary of Juror Molby has yet been addressed by this Court. Therefore[,] these items will be discussed separately.
>
> Affidavit of Robert Terrell, Sr.
>
> In an affidavit dated May 4, 2002, Robert Terrell, Sr. states that during his employment at Borroughs Manufacturing Company, he had a confrontation with Juror Molby. Mr. Terrell states that he worked at Borroughs from 11/27/67 until 10/28/87. Mr. Terrell also states that one day during a lunch break, Juror Molby pulled his car in front of Mr. Terrell's car and nearly hit him. Mr. Terrell states that after Juror Molby pulled in front of him Juror Molby, gave him "the finger." Mr. Terrell states that he forgot about the incident and did not recognize Juror Molby during the trial because his appearance had changed since their confrontation. Mr. Terrell also states that he had not really known Juror Molby since the two worked in different departments at opposite ends of the plant. Finally, Mr. Terrell states that Juror Mobley worked at Borrough's from 12/18/78 until 10/24/98[.]

Obituary of Juror Mr. Molby

Defendant provided a copy of Mr. Molby's obituary.  Defendant did not indicate what paper the obituary appeared in nor did he indicate when the obituary appeared in the paper.  The obituary states that Juror Molby was born on 5/24/60 and died on 10/24/98.  The obituary also states that he had been employed at Borroughs Manufacturing for 20 years.

Affidavit of Stanley Kilbourn

In an affidavit dated 5/2/02, Stanley Kilbourne states that Don Molby told him about the "road rage" incident with Robert Terrell, Sr.[]  Stanley Kilbourn also states that Don Molby had enjoyed "getting even with Robert Terrell, Sr. by watching how much his son's trial hurt him."  Finally, Stanley Kilbourne indicates that Don Molby told him that Robert Terrell, Jr. was going to be found guilty even before the evidence was heard and "how funny it was" that Robert Terrell, Sr. didn't even recognize him.  The affidavit does not describe Stanley Kilbourn's relationship with any of the parties in the case nor does it describe his relationship with Juror Molby. The affidavit does not indicate when Juror Molby supposedly made these statements. The affidavit does not indicate where Juror Molby made these statements.

Affidavit of Curtis J. Bell

Defendant has provided an affidavit from his trial attorney, Mr. Curtis Bell, stating that if any of the prospective jurors had indicated that they knew the Defendant or his family, Mr. Bell would have inquired as to the details of such knowledge.  The affidavit goes on to state that if a juror had any past negative or questionable contact with the Defendants or his family, Mr. Bell would have either utilized a peremptory challenge or a challenge for cause.

Court's Decision

In order to properly analyze Defendant's allegations, this Court must look to the [voir] dire transcript.  This Court has reviewed the voir dire transcript and as will be more thoroughly addressed below concludes the following:

(1) The voir dire transcript illustrates that all of the jurors indicated that they did not know Defendant or his family.

(2) The statements Stanley Kilbourn[] provides in his 5/2/02 affidavit were made after Juror Molby had died and can therefore not be refuted.

- 12 -

(3) Juror Molby was but one of twelve jurors who analyzed the case and returned a unanimous verdict. There is no indication in the record that Juror Mobley influenced eleven other jurors to convict Defendant.

<u>Voir Dire Transcript</u>

Voir [d]ire for Defendant's trial began in Defendant's case on Wednesday, March 20, 1996. On that date, this Court [] gave opening remarks along with some general instructions. This Court explained to all the prospective jurors, including Juror Molby, the importance of answering the questions given by the attorneys and the Court, as well as, the importance of being candid with the attorneys and the Court. The pertinent parts of the transcript read as follows:

> THE COURT: . . . The purpose of all this questioning, known as, <u>Voir</u> <u>dire</u>, is to get a group of individuals in the jury box in this frame of mind: A group of people who can say to themselves, If I was either the Plaintiff, the People of the State of Michigan; or, if I was the Defendant, Mr. Terrell, I would be satisfied with myself as a juror because I think I would get a fair trial from someone like myself: That's the whole purpose of this questioning.

> And we're going to probe your attitudes, your opinions, your beliefs. And, all we want is everyone to be honest.

> There are no right or wrong answers to these questions.

> Now, we're going to begin the process of finding out if you're qualified to be a juror in this particular case.

> So, back to the point that we started a couple minutes ago. If we go through this whole process, and you are sitting there, and - and you - you hear that you're about to become a juror because you're about to be sworn, and you're thinking to yourself, [w]ell, nobody asked me this question, but here's something I really think people ought to know about. And, then you might say to yourself, I wonder when we bring this up? - that's the time I want you to tell us, before you make an oath as a juror.

> Why? Because, if you take the oath as a juror and then you discuss with us later whatever it is that's troubling you, and we have to excuse you we've begun to defeat the purpose of having other people here before we even get started. And, that has happened

before when jurors don't understand when they're supposed to raise this issue.

And, we've had people tell us after they've been sworn, [w]ell, nobody asked this question, but, I think you ought to know that, you know, one of the parties is my brother-in-law, for example. Well, that's not going to work. So, that juror's gone.

Okay. So, that's the only time we wanna have you volunteer information.

If you don't understand a question, please don't be afraid to say, I don't understand what you're talking about. - or, [t]hat question confused me. Can you repeat it?

If you can't hear what is being said, let us know.

Don't be afraid to - to tell us, well, nobody asked me this, but I think you ought to know something. - if your about to be sworn as a juror.

Volume I, pages 9-11, lines 22-25, 1-25, and 1-18 of the trial transcript.

Later in the proceedings the attorneys named those individuals who would be called as witnesses in this case. Defendant's name was included in the list given by his attorney. Therefore, the entire jury panel, which included Juror Molby, was informed that Robert Terrell's son was involved. Volume I , Page 40 of the Trial Transcript. Following the list of witnesses and some initial instructions to the jury panel the Court questioned the first 14 individuals who were placed in the jury box. The transcript reads as follows:

Now, I'll begin asking you some questions:

First, and this is to the whole panel, is there anyone who knows the Defendant, Mr. Terrell?

PROSPECTIVE JURORS: No.

THE COURT: Okay. Now, we're gonna have to get into our routine of making a record, because if you were looking at this video you'd hear me ask that question and you'd not hear much on the other side. So, we have to have a loud . . . [.]

- 14 -

Anyone in the group of 14 who knows Mr. Terrell?

PROSPECTIVE JURORS:  No.

THE COURT:  Okay.  Thank you.  That's a lot better.  Now, is there anyone who knows or - or thinks they know Mr. Terrell's family?

PROSPECTIVE JURORS:  No.

Volume I, Page 51, lines 6-20 of the trial transcript[.]

Juror Molby was called to the jury box on Thursday, March 21, 1996, at approximately 13:52:14.  The trial transcript reads as follows:

(At 13:52:14, Prospective Juror Mr. Kuiper excused by the Defense)

JUDICIAL AIDE:  Juror Number 116, Donald Molby.

THE COURT:  Mr. Molby, could you hear all the questions and answers?

PROSPECTIVE JUROR MR. MOLBY:  Yes, sir.

THE COURT:  And, based upon what we've been talking about is there anything that you think we would want to explore with you, or you with us?

PROSPECTIVE JUROR MOLBY:  No.

Volume II, page 133, lines 15-24 of the trial transcript[.]

Later in the proceedings the transcript reads as follows:

THE COURT:  Do you know the victims, or any of their families?

PROSPECTIVE JUROR MOLBY:  No.

THE COURT:  Of Defendant or his family?

PROSPECTIVE JUROR MOLBY:  No, sir.

THE COURT:  Have you been exposed to media coverage of this event?

- 15 -

PROSPECTIVE JUROR MR. MOLBY:  No?

THE COURT:  Nothing whatsoever?  No T.V., no radio, no paper?

PROSPECTIVE JUROR MR. MOLBY:  No.

THE COURT:  No?  All right.

Volume II, page 134, lines 12-23 of the trial transcript[.]

Later in the proceedings the transcript reads as follows:

THE COURT:  Do you know of any particular reason why you couldn't sit as a juror in this case?

PROSPECTIVE JUROR MOLBY:  No.

THE COURT: If you were the Plaintiff would you be satisfied with yourself as a juror?

PROSPECTIVE JUROR MR. MOLBY:  Yes, I would.

THE COURT:  And, if you were the Defendant would you be satisfied with yourself as a juror?

PROSPECTIVE JUROR MR. MOLBY:  Yes.

THE COURT: Okay.  Thank you.

Volume II, page 135, lines 8-17 of the trial transcript[.]

Still later in the proceedings, Ms. Ankley, attorney for Defendant, asked Juror Molby the following:

MS. ANKLEY:  Mr. Molby, I'm looking at your jury history questionnaire.  And, also, you had left the last grade you completed, and as far as education-wise goes, what was that?

PROSPECTIVE JUROR MOLBY:  12th.

MS. ANKLEY:  12th grade?  Do you have any friends or family members that are police officers?

- 16 -

PROSPECTIVE JUROR MOLBY:  No.

MS. ANKLEY:  No?  And, do you subscribe to the newspaper here in . . .

PROSPECTIVE JUROR MR. MOLBY:  No.

MS. ANKLEY:  No?  Okay.  We have no further questions, Your Honor.

Volume II, pages 135-136, lines 23-25 and 1-11 of the trial transcript

At approximately 13:55:15 on Thursday, March 21, 1996, both parties expressed satisfaction with the jury, of which Juror Molby was included, and this Court gave the jurors one final chance to respond to the questions that had been posed to them during voir dire.  The transcript reads as follows:

THE COURT:  Okay.  Both sides have expressed a satisfaction with the jury.  Now, members of the jury, we're at the point we talked about yesterday.  Those of you that are here are about to become members of this jury and committed to the case.  And, you're with us for the next five weeks.  So, if -if we haven't touched on something, or if you're having anything you think you ought to express to us now's the time.  Everyone's satisfied that they're able to serve?

PROSPECTIVE JURORS:  (no verbal response)

THE COURT:  We have to have a record of that.

PROSPECTIVE JURORS:  Yes.

THE COURT:  Okay.  Thank you.

Volume II, Pages 136-137, lines 24-25 and lines 1-12 of the trial transcript.

The record is clear.  There is no indication that any of the jurors, including Juror Molby, knew the Defendant or his father.  All the jurors, including Juror Molby, were asked if they knew the Defendant or his father.  All the jurors, including Juror Molby, were asked if they knew the Defendant or any member of the Defendant's family.  All jurors, including Juror Molby, answered in the negative.  Any information to the contrary, including the statement of Stanley Kilbourn[] and the revelation of Robert Terrell Sr., emerged only after Juror Molby was dead.  Juror Molby is the only

- 17 -

individual who can refute both Mr. Kilbourn[]'s and Mr. Terrell's statements, yet his death obviously makes this impossible.

<u>Sentencing Transcript</u>

There is absolutely no indication that the jury verdict rendered was not unanimous or that Juror Molby influenced other jurors to find the Defendant guilty.  On Friday, April 19, 1996, the jury returned a verdict of guilty on all counts.  The transcript regarding the jury verdicts reads as follows:

> JUDICIAL AIDE:  Will the Foreperson, Number 31, please read the verdict?

> FOREPERSON:  We, the jury find the Defendant:

> Count I, as to Beth Enama, guilty of first-degree premedited murder and guilty of fi[r]st degree felony murder.

> Count II, as to Beth Enama, guilty of possession of a firearm in the commission or attempted commission of a felony, To-Wit; Murder.

> Count III, as to Douglas Kramer, guilty of first-degree premeditated murder and guilty of first-degree felony murder.

> Count IV, as to Douglas Kramer, guilty of possession of a firearm in the commission or attempted commission of a felony, To-Wit: Murder.

> Count V, as to Beth Enama, guilty of armed robbery.

> Count VI, as to Beth Enama, guilty of possession of a firearm in the commission or attempted commission of a felony, to wit: armed robbery.

> Count VII, as to Douglas Kramer, guilty of armed robbery.

> Count VIII, as to Douglas Kramer, guilty of possession of a firearm in the commission or attempted commission of a felony, To-Wit: Armed Robbery.

> Count IX, possession of a firearm by one convicted a felony, guilty.

Volume XV, pages 5-6, lines 3-25 and 1-2 of the trial transcript.

- 18 -

Following the foreperson's recitation of the verdict it was repeated by the Judicial Aide who asked the jury if this was in fact their verdict.  All the jurors replied in the affirmative.  The transcript reads as follows:

> JUDICIAL AIDE: . . . Is this your verdict?

> JURORS:  Yes.

Volume XV, page 7, lines 4-5 of the trial transcript.

All attorneys declined to have the jury polled.

After the jury rendered their verdict, they gave this Court a letter explaining the impact of the trial on their lives and the effort they put forth in making the decision. The letter was addressed to this Court on behalf of all the jurors and illustrates the sincerity with which the verdict was rendered.  This Court read the letter aloud and its contents are preserved in the trial transcript.  The relevant portion of the transcript reads as follows:

> THE COURT:  All right.  Here's what the - the letter says:

Judge Lamb,

> We, the jury, request you read this statement, on behalf of all of us.

> In the case, of:  The People of the State of Michigan versus Robert Terrell we have found him guilty on all nine counts.  We have, therefore, discharged our jury duty after five weeks of intense trial testimony, arguments and examination of the elements of the trial. We have studied the testimony of nearly 50 witnesses while reviewing, by video, several of the witnesses.

> We have reached a unanimous verdict on each of the nine counts.

> This has been an exhausting period in ou[r] lives.  We have spent three days thoroughly examining all of the evidence and information, and debating all the relevant issues to come to these consensus conclusions.  Therefore, we will not be available for any media questioning.

We have done our job as a jury, as charged by the court system, to the best of our collective and individual abilities.

Signed:  The Jury.

Volume XV, pages 8-9, lines 20-25 and 1-19 of the trial transcript.

The record clearly indicates that the jury made a unanimous decision based on all the evidence presented at tr[ia]l and there is no indication of any type of misconduct. The letter reflects that each and every member of the jury understood the tremendous responsibility with which they were burdened.  The letter illustrates that the jury came to their conclusion only after extensive review of the evidence presented and thoughtful, intelligent discussion about what the evidence showed.  There is absolutely nothing in the record to indicate that the jury based their decision on anything but the information and insight they gained from five intense weeks of trial and their own independent assessment of the case.  Any allegations to the contrary, including the statement of Robert Terrell, Sr. and Stanley Kilbourn[], emerged only after Juror Molby was dead.

Juror Molby died on Saturday, October 24, 1998.  Robert Terrell, Sr.'s affidavit is dated May 4, 2002 and Stanley Kilbourn[]'s affidavit is dated May 2, 2002 - more than four years after Juror Molby's death.  Juror Molby is the only individual who could refute both Mr. Kilbourn[]'s and Mr. Terrell's statements, but he is dead, which makes this impossible.  This Court will not grant a motion based on statements made several years after the death of a juror who was extensively questioned during voir dire.  There is no indication that Juror Molby was not completely candid during voir dire and furthermore, the letter provided to this Court following sentencing, indicates that all the jurors, including Juror Molby, made their decision only after painstaking review of the entire case.  Juror Molby obviously shared the feelings of all the jurors regarding the agonizing and exhaustive effort that was put forth in rendering a verdict.  The letter indicates that Juror Molby, along with the other jurors, thoroughly examined all of the evidence and debated all the relevant issues before coming to his individual conclusion that the Defendant was guilty on all counts.

For the reasons given above[,] Defendant's Motion for Relief from Judgment is denied.

(Ex. E to Br. in Supp. of Pet. at 7-19.)

The trial court's decision was the only reasoned treatment of the issue in the state courts, as the appellate courts denied relief by standard order.

- 20 -

**B.     Request for Evidentiary Hearing**

In his application for habeas corpus relief, Petitioner requests an evidentiary hearing to develop the factual basis of his juror bias claim.  (Br. in Supp. of Pet. at 6, 8.)  Petitioner filed motions for an evidentiary hearing in the trial court as well as the Michigan appellate courts.  All of the Michigan courts denied his requests for evidentiary hearings. (Ex. E to Br. in Supp. of Pet.; dockets #25, 27.)

Evidentiary hearings are not mandatory in § 2254 cases, but are held at the discretion of the court.  *See Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003).  Section 2254(e)(2) limits the circumstances under which a federal district court may grant an evidentiary hearing to a habeas corpus petitioner.  Section 2254(e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> > (A) the claim relies on-
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In *Williams v. Taylor*, 529 U.S. 420, 434-35 (2000), the Supreme Court interpreted the opening clause of § 2254(e)(2) to contain its own "diligence" requirement, separate from § 2254(e)(2)(A)(ii). *Hutchison v. Bell*, 303 F.3d 720, 729 (6th Cir. 2002) (citing *Williams*, 529 U.S. at 434-35). The "failed to develop" clause means:

> not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . .

*Hutchison,* 303 F.3d at 729 (citing *Williams,* 529 U.S. at 435); *accord Getsy v. Mitchell*, 495 F.3d 295, 310-11 (6th Cir. 2007) (*en banc*). The test for "fail[ure] to develop" is defined as a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel" in his or her attempts to discover and present a claim in the state court proceedings. *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004) (citing *Williams*, 529 U.S. at 432). Comity requires that the state courts have the first opportunity to review a petitioner's claim. *Id.* The *Williams* Court further explained:

> For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met.

529 U.S. at 437.

Under *Williams*, a finding of diligence "depends upon whether the petitioner made a reasonable attempt, in light of the information at the time, to investigate and pursue claims in state court." 529 U.S. at 435. "At a minimum," diligence requires that the prisoner "seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437. Thus,

seeking an evidentiary hearing in state court is necessary, but not always sufficient, to show diligence. *See Cannon v. Mullin*, 383 F.3d 1152, 1176 (10th Cir. 2004) (seeking evidentiary hearing in state court does not *ipso facto* establish diligence). Rather, Petitioner must also show that he pursued the factual basis of his claim in a reasonable and timely manner. *Id.*; *see Dowhitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) ("Mere requests for evidentiary hearings will not suffice; the petitioner must be diligent in pursuing the factual development of his claim."); *Jennings v. Renico*, No. 1:03-cv-611, 2005 WL 2679778, at * 3 (W.D. Mich. Oct. 20, 2005).

Although Petitioner sought an evidentiary hearing in the Michigan courts, the state trial court found that Petitioner was not diligent in pursuing his claims. The court repeatedly remarked that Petitioner had waited until four years after Juror Molby's death to raise his claims. The court also pointed to patent inadequacies in Petitioner's affidavits, which made it impossible to judge Petitioner's diligence. Mr. Kilbourn's affidavit did not describe his relationship with any of the parties in the case nor did it describe his relationship with Juror Molby. Importantly, Mr. Kilbourn's affidavit did not indicate when or where Juror Molby supposedly made his statements. The affidavit of Petitioner's father asserts that he did not recognize Molby during the trial because Molby's appearance had changed and because he "did not really know him." The affidavit is silent, however, on the date upon which Petitioner's father realized that he knew Molby. Taken as a whole, the trial court's findings underscore Petitioner's failure to demonstrate that his delay of more than six years in raising this issue represents the exercise of diligence. As pointed out by the trial court, the affidavits avoid the crucial question of when Petitioner and his affiants first became aware of the alleged juror bias. State court findings of fact are entitled to a presumption of correctness under 28

- 23 -

U.S.C. § 2254(e)(1). To rebut the presumption, Petitioner must provide clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Petitioner has failed to rebut the presumption by clear and convincing evidence. Petitioner has filed in this court Juror Molby's obituary and the affidavits of Mr. Kilbourn, Petitioner's father, and Curtis J. Bell. (*See* Exs. A, B, C to Br. in Supp. of Pet.) The information in those exhibits is consistent with the trial court's summary of the evidence presented in the state courts. As was true of his state-court presentation, Petitioner's affidavits fail to demonstrate diligence. Mr. Kilbourn's affidavit fails to describe when or where he approached Petitioner's father regarding Mr. Molby's allegations. Petitioner's father's affidavit fails to describe when or how he learned of Juror Molby's presence on the jury, nor does he state when the road rage incident occurred with Juror Molby. At the latest, the altercation between Juror Molby and Petitioner's father occurred on October 28, 1987, when Petitioner's father retired from Borroughs Manufacturing. Petitioner's trial began in March 1996, at least nine years after Petitioner's father retired.

Petitioner claims that he learned of his juror bias claim on June 19, 2001. (Br. in Supp. of Pet. at 1-2.) Petitioner, however, never describes how he learned of his juror bias claim on that date. Petitioner provided the following explanation regarding his claim:

> *Following [] Petitioner's conviction*, Petitioner's father, Robert Edward Terrell, Sr., was approached by an ex-co-worker named Stanley Kilbourn, who told Petitioner's father that a Mr. Don Molby, who previously had worked with Petitioner's father at B[o]rroughs Manufacturing Plant, had confided in Mr. Kilbourn that he (Molby) intentionally lied to get on Petitioner's jury in order to pay Petitioner's father back for a personal conflict that had arisen between Petitioner's father and Molby years prior.

(*Id.* at 4-5) (emphasis added.) Noticeably absent from Petitioner's explanation is a specification of when Mr. Kilbourn approached Petitioner's father. It is also unclear why Petitioner did not learn of

- 24 -

his claim until June 19, 2001, approximately three years after Juror Molby died in October 1998, and five years after his conviction in April 1996.  It is also a mystery as to why Petitioner waited an additional year, from June 2001 until May 2002, to obtain affidavits from his father and Mr. Kilbourn.  (*See* Exs. A, C to Br. in Supp. of Pet.)  All of this information should have been readily available to Petitioner and is necessary to demonstrate that the delay of six years represents the exercise of diligence.

Petitioner filed his second motion for relief from judgment on June 12, 2002, one year after he says he learned of his claim on June 19, 2001.[1]  (Br. in Supp. of Pet. at 2.)  In light of the information available to Petitioner at the time he filed his second motion for relief from judgment, Petitioner could have investigated and developed his claims prior to filing in state court.  *See Williams*, 529 U.S. at 435.  The trial court concluded that Petitioner failed to develop the record by omitting several material facts.  Petitioner has not provided clear and convincing evidence to rebut the state court's factual finding.  Accordingly, I find that Petitioner has failed the diligence requirement of the opening clause of Section 2254(e)(2).  When a petitioner fails the diligence requirement of the opening clause in Section 2254(e)(2), then he is directed to the strict requirements of subparts (A) and (B).  *See Williams*, 529 U.S. at 437*; Hutchison,* 303 F.3d at 729.

If a petitioner culpably has failed to develop facts in the state court, a federal court may only grant an evidentiary hearing if the habeas ground relies on "a new rule of constitutional law" or facts "that could not have been previously discovered through the exercise of due diligence" and "the facts underlying the claim would be sufficient to establish by clear and convincing evidence

---

[1]Petitioner argues that he could not have filed a second motion for relief from judgment while his first motion for relief from judgment was pending in the state courts.  (Br. in Supp. of Pet. at 3-4.)  Petitioner, however, did not cite any Michigan Court Rule to support his claim, nor is this Court aware of any such rule.

that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(A) & (B); *see also Hutchison,* 303 F.3d at 729. Petitioner does not allege that there is a new, retroactive rule of law from the Supreme Court applicable to his case under Section 2254(e)(2)(A)(i).  Accordingly, Petitioner must demonstrate that the factual predicates of his claim could not have been previously discovered through the exercise of due diligence, under Section 2254(e)(2)(A)(ii), and that such facts support a convincing claim of innocence, under Section 2254(e)(2)(B).  Petitioner fails both standards.

       First, Petitioner cannot demonstrate that the factual predicates of his claim could not have been previously discovered through the exercise of due diligence under Section 2254(e)(2)(A)(ii).  As the trial court held, Petitioner could have uncovered several important underlying facts for his juror bias claim by exercising due diligence.  Lack of diligence, however, will not bar an evidentiary hearing if efforts to discover the facts would have been in vain, and there is a convincing claim of innocence. *Williams*, 529 U.S. at 435.  Efforts by Petitioner to discover the facts of his juror bias claim would not have been in vain.  The state court and this Court found several unanswered questions in Mr. Kilbourn's and Petitioner's father's affidavits, which Petitioner could have easily answered before filing his second motion for relief from judgment and this habeas petition.  Second, Petitioner has not presented any claim of innocence. *See* 28 U.S.C. § 2254(e)(2)(B).  Indeed, his habeas claim does not involve his guilt or innocence at all, but the procedural fairness of his trial. *See Moore-El v. Luebbers*, 446 F.3d 890, 901 (8th Cir. 2008) (petitioner not entitled to evidentiary hearing, because newly discovered evidence did not show innocence).

Because Petitioner does not satisfy any requirements of section 2254(e)(2), he is not entitled to an evidentiary hearing.  Accordingly, I recommend that Petitioner's request for an evidentiary hearing be denied.

### C.    Merits

Petitioner argues that Juror Molby's alleged non-disclosure abridged  his right to a trial by an impartial jury under the Sixth and Fourteenth Amendments.  (Br. in Supp. of Pet. at iv.) The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. . . ."  U.S. Const. amend. VI.  The right to an impartial jury is applicable to the states via the Fourteenth Amendment.  *See Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  "[D]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment."  *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted).  The *voir dire* is designed "to protect [this] right by exposing possible biases, both known and unknown, on the part of potential jurors."  *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984).  Thus, "[t]he necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious."  *Id.*

In order for a petitioner to be entitled to habeas relief based on a juror's non-disclosure during *voir dire*, the petitioner "must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."  *McDonough,* 464 U.S. at 556.  Under *McDonough*

- 27 -

only those answers that affect a juror's impartiality can truly be said to affect the fairness of a trial. 464 U.S. at 556. The *McDonough* test governs habeas claims alleging that a juror intentionally concealed information. *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003). Under AEDPA, Petitioner must show that the state trial court's rejection of his claim under *McDonough* resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). Petitioner is required to show entitlement to relief under these principles on the basis of the information previously presented to the state courts, because section 2254(e)(2) prohibits him from establishing his claims with new facts in an evidentiary hearing in federal court. *See Breard v. Greene*, 523 U.S. 371, 376-77 (1998) (*per curiam*); *Samatar v. Clarridge*, 225 F. App'x 366, 374 (6th Cir. 2007).

The question of bias of an individual juror at a state criminal trial is a question of historical fact. *Dennis,* 354 F.3d at 520 (citing *Patton v. Yount,* 467 U.S. 1025, 1036 (1984)); *see also Sizemore v. Fletcher,* 921 F.2d 667, 672-73 (6th Cir. 1990) (citing *Smith v. Phillips*, 455 U.S. 209, 218 (1982)). A state court decision on this issue based on a factual determination will not be overturned unless it was objectively unreasonable in light of the evidence presented in the state court proceeding. *Dennis,* 354 F.3d at 518. "The question for this Court is simply whether the state court's decision was 'fairly supported by the record,' not whether it was right or wrong in its determination of impartiality." *Id* (quoting *Wainwright v. Witt,* 469 U.S. 412, 424 (1985)). The trial court's factual determination is entitled to a presumption of correctness, which is rebuttable only by clear and convincing evidence under 28 U.S.C. § 2254(e)(1). *Dennis,* 354 F.3d at 520..

In reviewing Petitioner's second motion for relief from judgment, the trial court found that Petitioner had not demonstrated that he was entitled to relief.  After extensively reviewing the trial transcripts, the trial court held that Juror Molby was completely candid during *voir dire.*  (Ex. E to Br. in Supp. at 19.)  The trial court made the following findings regarding the trial transcripts. First, the trial transcripts provide absolutely no evidence that Juror Molby knew Petitioner's father. During *voir dire*, Juror Molby and the other jurors were specifically asked whether they knew Petitioner's father.  (*Id.* at 13.)  All of the jurors, including Juror Molby, answered, "No."  (*Id.*) Further, it appears that Juror Molby reached his verdict after thoroughly examining all of the evidence from the five week trial.  (*Id.* at 18.)  After Petitioner's sentencing,  the jurors, including Juror Molby, presented the trial judge with a letter, which indicated that all of the jurors studied the evidence in great detail and reached a unanimous verdict.  (*Id.* at 18-19.)  Juror Molby died on October 24, 1998. (Ex. B to Br. in Supp. of Pet.) Mr. Kilborn's and Petitioner's father's affidavits are dated in May 2002, almost four years after Juror Molby's death.  Because Juror Molby is dead, the trial court emphasized that Juror Molby cannot refute Mr. Kilbourn's and Petitioner's father's affidavits.  (Ex. E to Br. in Supp. at 19.)  The trial court concluded that Mr. Kilbourn's and Petitioner's father's affidavits were not credible:

> There is absolutely nothing in the record to indicate that the jury based their decision on anything but the information and insight they gained from five intense weeks of trial and their own independent assessment of the case.  Any allegations to the contrary, including the statement of Robert Terrell, Sr. and Stanley Kilbourn[], emerged only after Juror Molby was dead.

(*Id.*)  The trial court's finding that Juror Molby honestly answered the *voir dire* question regarding Petitioner's family is presumed to be correct.  In the face of the questions asked of Juror Molby on

*voir dire*, the trial court's instructions to the jury, Juror Molby's responses, and the letter to the trial court, the trial court's finding is clearly reasonable.

Petitioner is required to rebut trial court's presumption of correctness with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  The vague affidavits presented to the state courts and to this court are insufficient to overcome the trial court's findings under this standard.  Furthermore, the record does not support Petitioner's new argument that Juror Molby contradicted his previous *voir dire* testimony by identifying Petitioner's father at the April 19, 1996 hearing on Petitioner's motion for mistrial.  (Br. in Supp. of Pet. at 16-18; *see also* docket #60.)  According to the transcript of the hearing on the motion for mistrial, Juror Molby was brought into chambers to discuss certain statements that he made to a parking attendant.  (HT at 3-5)  The transcript provides:

> MR. BELL: Yes.  You seem very nervous.  Are you certain that no one has contacted you or have you received any suspicious sort of activities that make you very nervous or uncomfortable?
>
> * * *
>
> MR. BELL:  Have you - Do you feel that someone has attempted to contact you in any way?
>
> JUROR MOLBY:  No.  Other than eye communication.
>
> MR. BELL:  Pardon me, sir?
>
> JUROR MOLBY:  Other than eye communication.
>
> MR. BELL:  Eye communication?
>
> JUROR MOLBY:  Yeah.  Somebody giving you the real cold stare.
>
> MR. BELL:  Someone in the courtroom?
>
> JUROR MOLBY:  Yes.

- 30 -

MR. BELL:  Was the person here throughout the trial?

JUROR MOLBY:  Yes.

MR. BELL:  Who was that person?

JUROR MOLBY:  Robert's father.

MR. BELL:  And you feel that he's giving you - stare at you in a bad way?

JUROR MOLBY:  Yes, sir.

THE COURT:  When you say Robert, you're referring to the defendant Robert Terrell?

JUROR MOLBY:  His father.

THE COURT:  Okay.

MR. BELL:  What sort of looks - Did you feel intimidated by the looks?

JUROR MOLBY:  That's correct.

MR. BELL:  Thank you, sir.

THE COURT:  Again, I'll come back to the basic question, Mr. Molby, do you think you can decide the case based on the evidence, the instructions that you've received, putting aside any of these feelings that you have of apprehension?

JUROR MOLBY:  Yes.

THE COURT:  Okay.  Any other questions?

MR. BELL:  Just one, actually.  Have you communicated these sentiments with other jurors?

JUROR MOLBY:  No.

MR. BELL:  Are there other jurors who have the same sentiments regarding his father?

JUROR MOLBY:  Not that I know of.

- 31 -

(Mot. for Mistrial Hrg. Tr. at 8-10.)

During the hearing on the motion for mistrial Juror Molby did not indicate that he recognized Petitioner's father as a former co-worker and did not testify regarding any previous problems with Petitioner's father, even though the hearing specifically focused on Petitioner's father. Petitioner has not provided clear and convincing evidence that Juror Molby knew his father or that any prior incident between them influenced Juror Molby's decision.  In fact, Petitioner's present argument proves too much.  If indeed Juror Molby had admitted at the mistrial hearing that he knew Petitioner's father, Petitioner has no possible excuse for the delay of six years in raising the issue. The transcript of that hearing, however, simply cannot bear the interpretation that Petitioner now ascribes to it. Petitioner has failed to rebut the presumption of correctness that attaches to the trial court's factual findings under 28 U.S.C. § 2254(e)(1).[2]

Petitioner cannot sustain his claim that the trial court's decision represented an unreasonable application of the Supreme Court's decision in *McDonough*.  Under *McDonough*, a petitioner must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause.  464 U.S. at 556.  Because the trial court's decision that Juror Molby honestly answered the questions regarding Petitioner's family on *voir dire* was objectively reasonable, Petitioner fails

---

[2] Petitioner also argues that the trial court should have examined the transcript of the hearing on the motion for mistrial under MICH. CT. R. 6.504(B)(1).  (Br. in Supp. of Pet. at 17.)  The mere fact that the trial court did not summarize the transcript of the hearing on the motion for mistrial does not mean that the trial court did not consider the transcript.  *See* MICH. CT. R. 6.504(B)(1) ("[t]he court shall promptly examine the motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack.") If anything, the trial court's examination of the 1996 hearing transcript would have further undermined the credibility of Petitioner's claim of newly discovered evidence.  Juror Molby was obviously the subject of intense scrutiny by the defense at the hearing, yet his fitness was not challenged on the basis of any previous acquaintance with Petitioner's father.  That claim came years later, only after Molby's death.

to satisfy the first part of the *McDonough* test, and, thus, the requirements of 28 U.S.C. § 2254(d)(1).

Accordingly, the state court's rejection of Petitioner's claim was neither contrary to nor an

unreasonable application of clearly established federal law, nor was it based on an unreasonable

determination of the facts in light of the evidence presented.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied on

its merits.

Dated:  December 29, 2008                    /s/  Joseph G. Scoville
                                             United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of
service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and
responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections
may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th
Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).